1  JASON D. RUSSELL (SBN 169219)
   Jason.Russell@skadden.com
2  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue, Suite 3400
3  Los Angeles, California 90071
   Telephone: (213) 687-5000
4  Facsimile: (213) 687-5600

5  OF COUNSEL:
   KENNETH A. PLEVAN *(To Be Admitted)*
6  Kenneth.Plevan@skadden.com
   JAMIE STOCKTON (*To Be Admitted*)
7  Jamie.Stockton@skadden.com
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
8  Four Times Square
   New York, New York 10036-6522
9  Telephone: (212) 735-3410
   Facsimile: (917) 777-3410
10
   Attorneys for Plaintiff
11 BRETT RATNER

12              **UNITED STATES DISTRICT COURT**

13             **CENTRAL DISTRICT OF CALIFORNIA**

14                      **WESTERN DIVISION**

15 BRETT RATNER,                    )  Case No.: 2:15-cv-849
                                    )
16        Plaintiff,                )
                                    )
17            v.                    )  **COMPLAINT FOR**
                                    )  **DECLARATORY RELIEF**
18 HEAVEN HILL DISTILLERIES,        )
   INC.,                            )
19                                  )
                                    )
20        Defendant.                )
                                    )
21                                  )
                                    )
22                                  )
                                    )
23                                  )
                                    )
24 _____  )

25

26

27

28

_____
              PLAINTIFF'S COMPLAINT FOR DECLARATORY RELIEF

1    Pursuant to the Court's jurisdiction under 28 U.S.C. §§ 1331, 1338, 1367,
2  1391, 2201 and 2202, and 15 U.S.C. §§ 1121 and 1125, Plaintiff Brett Ratner
3  ("Plaintiff" or "Ratner") files this Complaint against Defendant Heaven Hill
4  Distilleries, Inc. ("Defendant" or "HHD"), by and through his undersigned counsel,
5  upon knowledge as to himself and upon information and belief as to all other matters,
6  and alleges for his complaint as follows:

7                          **NATURE OF THE ACTION**

8    1.    This is an action for a declaration that:  (i) Ratner's HILHAVEN
9  LODGE and THE HILHAVEN trademarks ("Plaintiff's Marks" or the "Brand") do
10 not infringe Defendant's HEAVEN HILL trademark ("Defendant's Mark"), i.e., that
11 Plaintiff's Marks, when used in commerce on alcoholic beverage products, or any
12 other consumer products, will not create a likelihood of consumer confusion; and (ii)
13 Defendant's infringement claim is barred by the doctrines of laches and acquiescence.

14                             **THE PARTIES**

15   2.    Plaintiff Brett Ratner is a renowned producer and director of movies and
16 television.  He is a resident of California and owns Hilhaven Lodge in Beverly Hills,
17 California.

18   3.    Defendant Heaven Hill Distilleries, Inc. is a corporation organized
19 under the laws of Kentucky, and has its principal executive offices at 1064 Loretto
20 Road, Bardstown, Kentucky 40004.

21
22
23
24
25
26
27
28

**JURISDICTION AND VENUE**

4.      This is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and 15 U.S.C. § 1125(a).  The U.S. District Courts have subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338, and 1367, and 15 U.S.C. § 1121, because this is a matter arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.  See also La Quinta Worldwide LLC v. Q.R.T.M. S.A. de C.V.*, 762 F.3d 867 (9th Cir. 2014).

5.      This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because it is a civil action between a citizen of a State and a citizen or subject of a foreign state, and the amount in controversy, exclusive of costs and interest, exceeds $75,000.

6.      HHD is qualified to do business in California (Entity No. C1360651).

7.      HHD has established minimum contacts with this forum such that the exercise of personal jurisdiction over HHD will not offend traditional notions of fair play and substantial justice.  In particular, HHD has committed such purposeful acts and/or transactions in the State of California that it reasonably knew and/or expected that it could be sued in a California court as a future consequence of such activity.

8.      HHD regularly conducts business in this judicial district, in that it has: (i) made, used, sold and offered products or services to wholesalers, distributors, retailers, and/or consumers in this judicial district in connection with its use of Defendant's Mark; (ii) advertised and marketed products to wholesalers, distributors, retailers, and/or consumers in this district in connection with its use of Defendant's Mark; and (iii) provided customer service to wholesalers, distributors, retailers, and/or consumers in this district in connection with its use of Defendant's Mark. Thus, personal jurisdiction exists and venue is proper in this Court pursuant to 28 U.S.C. § 1391 and California Code of Civil Procedure § 410.10.

PLAINTIFF'S COMPLAINT FOR DECLARATORY RELIEF

# FACTUAL BACKGROUND

## Plaintiff's Marks

9.    The trademarks HILHAVEN LODGE and THE HILHAVEN have their origin in an iconic residence in Beverly Hills, California, known in Hollywood culture as Hilhaven Lodge.

10.    Built in the 1920s, Hilhaven Lodge has been associated over the years with mega-stars including Ingrid Bergman (a former owner), Kim Novak, James Caan (a former resident), and producer Allan Carr.  The long list of Hollywood guests visiting Hilhaven Lodge over the years also has been featured in a book entitled "Hilhaven Lodge: The Photo Booth Pictures," published in 2003.

11.    This renowned residence has now been owned for almost 15 years by Ratner, who chose Plaintiff's Marks in good faith based on his personal connection to Hilhaven Lodge.

12.    At least as early as three years ago, Ratner developed a business plan to use HILHAVEN LODGE, and terms derivative therefrom, such as THE HILHAVEN, as a brand.

13.    Ratner decided that the first product he planned to market under the Brand would be a high-end whiskey.  In furtherance of this goal, and to reserve rights in the Brand, Ratner filed federal trademark applications with the United States Patent and Trademark Office ("USPTO").

14.    On April 25, 2012, Plaintiff filed Intent to Use trademark applications with the USPTO for the mark HILHAVEN LODGE, for, among other things, alcoholic beverages except beer, U.S. Serial Numbers 85607356 (character mark) and 85607366 (stylized mark).  (*See* TESS Reports, Ex. 1 hereto.)

15.    On July 2, 2012, Plaintiff filed an Intent to Use trademark application with the USPTO for the mark THE HILHAVEN, for alcoholic beverages except beer, U.S. Serial Number 85666523.  (*See* TESS Report, Ex. 2 hereto.)

PLAINTIFF'S COMPLAINT FOR DECLARATORY RELIEF

16.     HILHAVEN LODGE applications were published for opposition on April 23, 2013 in the USPTO Official Gazette.  No oppositions were filed.

17.     THE HILHAVEN application was published for opposition on September 25, 2012 in the USPTO Official Gazette.  No oppositions were filed.

18.     The USPTO examiner approved Plaintiff's THE HILHAVEN trademark application without citing to the registrations for Defendant's Mark, and Plaintiff received a Notice of Allowance on November 20, 2012.  The trademark registration will issue in due course upon the filing of a Statement of Use.

19.     The USPTO examiner approved Plaintiff's HILHAVEN LODGE trademark applications without citing to the registrations for Defendant's Mark, and Plaintiff received Notices of Allowance on June 18, 2013.  The trademark registrations will issue in due course upon the filing of Statements of Use.

**Plaintiff's Preparations and Investments Relating to the Brand**

20.     In furtherance of his plan to introduce the Brand to consumers by selling a high-end, top-quality blended whiskey product, Ratner entered into negotiations with Diageo North America, Inc. ("Diageo"), the domestic subsidiary of Diageo plc, a global leader in the beverage alcohol market, whose products are sold in over 180 countries.

21.     As part of this proposed business relationship, Ratner expects to license Plaintiff's Marks to Diageo in connection with the manufacture, advertising, marketing, promotion, merchandising, distribution and sale of beverage alcohol products.

22.     In anticipation of launching the Brand, Ratner and Diageo have each invested a considerable amount of time, energy, and resources.

23.     Ratner and Diageo have made significant investments and preparations with respect to a Branded whiskey product, including but not limited to:  research and development of the whiskey itself; developing a marketing, publicity and distribution plan targeting sophisticated consumers of high-end whiskey and other

1   luxury goods; and the creation and development of a bottle, packaging, and label
2   design.

3       24.    The front label developed for the bottle prominently features the
4   Hilhaven Lodge and its heritage, e.g. "Hilhaven Lodge, Beverly Hills, Ca., Estd.
5   1927."  (*See* Ex. 3, a photo of the bottle that is planned to be used, and Ex. 4, the
6   final bottle label.)

7       25.    Consistent with this label, it was planned that marketing for the Branded
8   whiskey product would associate the product with the heritage of the Hollywood of
9   the 1920s and 1930s, and promote the Brand's origination with Hilhaven Lodge and
10  the glamour it represents.

11      26.    On December 17, 2014, during a call with industry analysts, a
12  representative of Diageo publicly disclosed the plan to launch a new brand of North
13  American whiskey under the name "Hilhaven."

14          **Defendant's December 24, 2014 Letter**

15      27.    On December 24, 2014, after learning of Diageo's involvement with the
16  Brand, counsel for Defendant sent a cease and desist letter to Diageo, specifically
17  referencing the remarks during the December 17, 2014 call with industry analysts.
18  (*See* Ex. 5 hereto.)

19      28.    In this letter, Defendant's counsel protested use of the "name
20  HILLHAVEN" [sic] as "much too similar" to Defendant's Mark, and asserted that it
21  would "inevitably create a likelihood of confusion in the marketplace, thereby
22  infringing Heaven Hill's rights in its HEAVEN HILL mark."  (*Id.*)

23      29.    Defendant's counsel further stated that "Should Diageo elect to move
24  forward, Heaven Hill will consider the infringement that will inevitably result to be
25  willful and will take all necessary actions, legal and otherwise, to protect and enforce
26  its rights in its HEAVEN HILL mark."  (*Id.*)

27          **Plaintiff's January 21, 2015 Response**

28      30.    Diageo forwarded to Plaintiff Defendant's December 24, 2014 letter.

5

31. On January 21, 2015, counsel for Plaintiff responded to Defendant's December 24, 2014 letter. The response explained that Plaintiff is the owner of the trademark THE HILHAVEN, and informed Defendant of Plaintiff's prospective economic relationship with Diageo, including that extensive efforts had been taken over the prior 2 ½ years to prepare for the upcoming launch of the Branded whiskey product. (*See* Ex. 6 hereto.)

32. Counsel for Plaintiff further explained the history behind the Brand, and explained why Plaintiff's and Defendant's Marks would be easily distinguishable by consumers. (*Id.*)

33. Counsel for Plaintiff also pointed out that Plaintiff's THE HILHAVEN trademark application had been published for opposition without any oppositions, and stated: "We trust that as part of its policing efforts, [HHD] carefully monitors the USPTO Official Gazette for filings in International Class 33 for beverage alcohol products for possible infringing marks. Based on this, we surmise that Distilleries was aware of the Ratner trademark application, and made a conscious decision in the fall of 2012 not to oppose the regulation of that application."

## Defendant's January 26, 2015 Letter

34. On January 26, 2015, counsel for Defendant sent a second cease and desist letter, this time to counsel for Plaintiff, objecting to Plaintiff's proposed use of both THE HILHAVEN and HILHAVEN LODGE and to the prospective business relationship with Plaintiff's "partner Diageo." (*See* Ex. 7 hereto.)

35. This letter failed to respond to or comment on Plaintiff's assertion that Defendant had known of Plaintiff's trademark applications during the opposition period, and admitted that Plaintiff's "ownership of the historic home Hilhaven Lodge may have led him to choose this trademark in good faith." (*Id.*)

36. Defendant's counsel further stated that, while "Heaven Hill does not protest the use of HILHAVEN LODGE with the majority of [the goods listed in the

PLAINTIFF'S COMPLAINT FOR DECLARATORY RELIEF

1  application], we request that your client agree to abandon both marks with respect to
2  alcoholic beverages." (*Id.*)

3       37.   Counsel for Defendant asserted that a "nationwide distribution of the
4  sort described by your client's partner Diageo North America is certain to trespass
5  upon Heaven Hill's intellectual property rights, and Heaven Hill will have no choice
6  but to take the necessary steps to protect its rights in its longstanding and well-
7  established reputation, in order to prevent consumer confusion." (*Id.*)

8                        **Defendant's History of TTAB Oppositions**

9       38.   Defendant regularly monitors the USPTO Official Gazette, and has filed
10  notices of opposition, and/or requests for extensions of time to file notices of
11  opposition, on numerous occasions over the past 20 years, including as recently as
12  September 2014.  These filings are typically handled for Defendant by Wyatt,
13  Tarrant & Combs, LLP, the same outside counsel that authored the letters referenced
14  above on behalf of Defendant.  (*Id.*)

15       39.   This history of actively filing oppositions, and/or requests for extensions
16  to file oppositions, combined with the silence of the January 26, 2015 response to
17  Plaintiff's counsel's assertion that Defendant was aware of Plaintiff's Marks when
18  they were published for opposition, creates a strong inference that Defendant knew
19  of Plaintiff's Marks as early as 2012, and decided not to challenge them, because
20  Defendant concluded that they were not infringing.

21       40.   It was only when the relationship with Diageo became public that
22  Defendant determined to assert trademark infringement, indicating that HHD is
23  seeking to insulate itself from competition, not avoid consumer confusion.

24       41.   Plaintiff therefore brings this lawsuit in order to remove the cloud cast
25  over Plaintiff's Marks and Brand by Defendant's allegations of infringement, so that
26  Plaintiff can proceed with his plans to develop and launch the Brand and the Branded
27  whiskey product.

28

PLAINTIFF'S COMPLAINT FOR DECLARATORY RELIEF

# FIRST CLAIM FOR RELIEF

## Lanham Act § 43(a)

42.     Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as though fully set forth herein.

43.     Plaintiff's HILHAVEN LODGE mark is based on Plaintiff's historically significant home of the same name, and was chosen in good faith.

44.     Plaintiff's HILHAVEN LODGE mark is readily distinguishable from Defendant's HEAVEN HILL mark, both visually and phonetically.

45.     Consumers of high-end expensive whiskies are sophisticated.

46.     Marketing and advertising for HILHAVEN LODGE whiskey would be targeted toward the luxury goods market.

47.     There would be no likelihood of consumer confusion between HILHAVEN LODGE used as a brand for alcoholic beverages or other consumer goods and HEAVEN HILL.

48.     In light of the foregoing, pursuant to 28 U.S.C. §§ 2201 and 2202, and 15 U.S.C. § 1125(a), the Court should declare that Plaintiff's HILHAVEN LODGE mark would not infringe Defendant's Mark and will not create a likelihood of consumer confusion.

# SECOND CLAIM FOR RELIEF

## Lanham Act § 43(a)

49.     Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as though fully set forth herein.

50.     Plaintiff's THE HILHAVEN mark is based on Plaintiff's historically significant home of the same name, and was chosen in good faith.

51.     Plaintiff's THE HILHAVEN mark is readily distinguishable from Defendant's HEAVEN HILL mark, both visually and phonetically.

52.     Consumers of high-end expensive whiskies are sophisticated and would not be confused as to the source of the Branded whiskey product described herein.

53.     Marketing and advertising for THE HILHAVEN whiskey would be targeted toward the luxury goods market.

54.     There would be no likelihood of consumer confusion between THE HILHAVEN used as a brand for alcoholic beverages or other consumer goods and HEAVEN HILL.

55.     In light of the foregoing, pursuant to 28 U.S.C. §§ 2201 and 2202, and 15 U.S.C. § 1125(a), the Court should declare that Plaintiff's THE HILHAVEN mark would not infringe Defendant's Mark and will not create a likelihood of consumer confusion.

## THIRD CLAIM FOR RELIEF

### Laches and Acquiescence

56.     Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as though fully set forth herein.

57.     Defendant and/or its counsel regularly monitor the USPTO Official Gazette for possible infringing marks.

58.     Plaintiff's Marks were published for opposition on April 25, 2012 and September 25, 2012.

59.     Defendant was aware of said mark publications, evaluated them, and after conferring with counsel reached a conclusion that Plaintiff's Marks would not cause consumer confusion with Defendant's Mark.

60.     Defendant did not file a notice of opposition, or a request for extension of time to file a notice of opposition, with respect to any of Plaintiff's Marks.

61.     Defendant's allegations of trademark infringement should be barred by the doctrines of laches and acquiescence.

PLAINTIFF'S COMPLAINT FOR DECLARATORY RELIEF

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully seeks an Order of this Court:

A.    Declaring that Plaintiff's HILHAVEN LODGE mark used as a brand for alcoholic beverages or other consumer products would not infringe Defendant's Mark and would not create a likelihood of consumer confusion;

B.    Declaring that Plaintiff's THE HILHAVEN mark used as a brand for alcoholic beverages or other consumer products would not infringe Defendant's Mark and would not create a likelihood of consumer confusion;

C.    Declaring that Defendant's infringement claim is barred by the doctrines of laches and acquiescence;

D.    Awarding to Plaintiff its attorney's fees and expenses and the costs and disbursements of bringing this action; and

E.    For such other and further relief as the Court deems just and proper.

DATED:  February 5, 2015

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  /s/ Jason D. Russell
Jason D. Russell
Attorneys for Plaintiff
Brett Ratner

10
PLAINTIFF'S COMPLAINT FOR DECLARATORY RELIEF
1125143-NYCSR01A - MSW